May it please the Court, Jordan Ludwig of Bleacher Collins, Peppermint and Joy Still you? Again, on behalf of the Grant Players No change of identity in between cases, okay If possible, I would like to reserve five minutes for rebuttal Okay In arguing this case Okay And also I would like to apologize to the Court for arguing Brown v. Hindsight being 2020 Grant seemed like the more natural choice, but as counsel pointed out, Brown was You're burning time for no reason whatsoever You're just sitting there babbling on, running the clock down I apologize As I stated in my prior argument, a jury has already found that an extraordinarily similar relationship has formed Those people paid dealers Your clients didn't How extraordinarily similar is it? All of these clients at one time or another paid dues In fact, two of them paid dues during the class period And the real heart of the case, as I stated, is that the NFLPA did not treat these individuals any differently And if I could invite the Court to a couple of pieces of evidence in this very voluminous record that we think most illustrate this First is DeMorth's What possible claim do they have? They paid, you know, for a while they were members without paying dues, right? And then they said, you know, you can pay dues and continue to be a member, and they decided not to pay And this is just the way it works, you know, sort of like a movie ticket Or a football ticket, right? You can't get in if you haven't bought a ticket, right? We would submit that it is different because of the representations made by them And these players are, a lot of them are very unhappy with the way that the NFLPA treated them And I think part of the reason they didn't pay these dues was as a form of almost symbolic protest against the NFLPA You mean after, so just factually, when they're playing, they're actually playing for the NFL Are they automatically members of the Players Association? No, Your Honor, I believe they have to actually pay dues while they're playing in the NFL And is that an opt-in or an opt-out? I'm not 100% sure, but I think it's mandatory that every NFL player has to pay dues to join the NFLPA Okay, and then they play for three years and retire And at that point they either have to pay dues or have their dues waived to be a member I believe that's correct with the exception that I think for the first two years after you retire you have complimentary membership So you have two years for free and then you pay dues or you have your dues formally waived By, for example, attending a military base or giving a speech in a hospital or something along those lines And can you clarify whether your legal theory is that the Players Association breached their fiduciary obligations by failing to obtain licensing agreements or is your legal theory that they breached their fiduciary duty by licensing members of the class' images but not reimbursing them or compensating them for that licensing? Both, Your Honor. Since the Adderley case, I think the NFLPA has maybe taken a step back But, for example, the contract with EA was tiered So the NFLPA was getting paid, I think, from every year from 2005 or 2006 through 2012 to 2013, I believe That's on page 259 of our excerpts of record And EA was not particularly cooperative in the discovery of this So we really couldn't get, they refused to give us the list of retired players or their images which were featured in games Are you appealing that issue? No, you're on time This is sort of a sad story you're telling us? You know, we're treated badly. Why don't you get to the point? I was responding to my question What does the discovery difficulties have to do with it? I'm just saying we don't have any hard evidence in the record of which players were featured in which games And that's why we couldn't make a more direct argument on it Summary judgment was granted before we actually got that information But you have what you have and you don't have what you don't have If you're not appealing the discovery issues, you're stuck with the discovery you had The fact that you had difficulties getting it doesn't matter, right? No, it doesn't The point is you don't have the information Correct And that's the record we have to deal with Yes, and I guess the short answer to your question, Judge Voidlaw, is that our theory is both That they failed to go out and get licensing opportunities And I think that that's pretty undisputed in the deposition testimony of Ms. LaShun Lawson She stated unequivocally, did you ever try and retire licensed players? She said no I believe Andre Collins said the same thing So that we have hard evidence for its admissions The real question is whether or not a duty I mean that doesn't help you, that was Adderley, right? No, no, that was in our case I understand, but that was Adderley That was established in Adderley that they didn't go out and promote their retired players, right? Well, I think Adderley was also both But they had more evidence of payouts that were never made to retired players that should have been They went to trial on that and they had the evidence of that But I also We don't have the evidence in this case, right? We have nothing that says that these players were owed X amount of dollars during that We just, as I pointed out, just never had the time to get that information before summary judgment was granted But I think the real crux of this case is that they never actually went out and licensed those retired players And that seems to be undisputed And the real issue is whether or not the fiduciary obligation exists And we presented On that question, agency requires more than subjective consent It requires the principal to manifest consent to the agent What evidence shows the plaintiffs manifested their consent to the NFL Players Association? We think that there's several pieces of evidence The first and easiest theory, which is the theory that we're taking on class certification in Brown Is that paying dues to an NFL PA Paying dues to the NFL PA Or having your dues formally waived Was a sufficient manifestation of consent to allow for that The second, and we think more implied, I think is best embodied in a quote by one of the deponents Mr. Roberts, who stated Why wouldn't I assume they were going to represent me when they Why wouldn't I assume they were going to represent everyone? And that's because these are the representations that were made If the NFL PA is out there telling third parties and telling the world That we represent all retired players And that's what Mr. Clay Walker's email says That's contained on page 353 of our excerpts of record It says we represent virtually all retired players for licensing purposes It didn't say we represent certain retired players It didn't say we represent retired players What difference does it make? What statement does it make to third parties? You don't establish a fiduciary relationship by talking to third parties No, of course not, Your Honor You don't hire a lawyer by talking to a doctor And establish a fiduciary relationship with a lawyer, right? No, Your Honor, you don't You actually have to have some sort of agreement With the person that has a fiduciary duty And in this case, why wasn't the family going to pay dues? You know, they paid dues, it's okay That arguably is a method of establishing a fiduciary relationship But they didn't do that They were told they could, and they chose not to Mr. Jones and Mr. Cobb did pay dues during the actionable period But for the other ones, our other theory is that Being a member of the NFLPA or not If they were representing it, why would they go to consent? Judge Nelson asked what evidence of consent we have And we would say, say to that If they're making these representations If somebody says I'm going to do something for you You wouldn't then go and say, oh, can you do this for me? It just doesn't make sense And you can imply an agency by conduct And we think the conduct here on the NFLPA was so unequivocal That why would the players go and say Oh, would you be my licensing agent? In view of the fact that they've already agreed to do it And they've represented to third parties And they've represented to the world that they're doing it Well, Mr. Cobb chose not to sign the CLA He paid dues only in 2005 and 2008 He became a member, he said, to obtain a directory Clinton Jones paid dues 2007 and four other times He said he joined for fraternity with his fellow players Mr. Jones also stated that he joined the NFLPA For whatever benefits they purported to provide for him And that's on page 106 of our excerpts And we believe it's fairly clear that the NFLPA did agree To provide the benefit of representation of group licensing For these retired players And we would say that for purposes of summary judgment Maybe a jury would not find in view of that He didn't join the NFLPA for that And he didn't manifest consent for purposes of an agency But for purposes of summary judgment When it comes to an agency relationship Summary judgment may only be decided for an agency relationship Where the essential facts are not in dispute And where it's susceptible to only a single inference And we believe that this creates more than one inference And the essential facts are in dispute And that's whether or not an agency joining the NFLPA Or whether or not the defendant's representations Can create this agency relationship Well, you're very consistent in your answer About what constitutes this class They joined and they paid dues That's our theory, your honor Well, some of them didn't Some of your clients didn't How do you account for those? I mean, a couple of these guys did sometime during the period How about the rest of them? Well, I believe they all were at least members of the NFLPA During some point in time Maybe not during the actionable period And I think that there is an open question Even if they joined beforehand That could constitute a manifestation of consent And when viewed in tandem with the conduct of the defendants Is that bilateral relationship that the defendants claim is lacking? I don't understand You say it could I don't understand how If you're a member of an organization and then you quit I don't see how you can continue to say that Based on your membership of an organization That you can have a continuing relationship But, for example, Bob Grant You know, golf club? I don't know I don't have a membership there But I assume that they don't keep letting you play golf Once you quit paying your dues to them But Bob Grant hadn't paid dues since 1993 But I believe Bob Grant was still a chapter head of the Los Angeles chapter Without paying dues I believe, I think it was Bob Grant But at least one of our members, one of our plaintiffs Was a member of the chapter head Or a member of the Los Angeles chapter Without paying dues And we think that that creates questions of fact As to what actually constitutes an NFLPA membership Such that summary judgment should not have been granted This wasn't an appeal from a jury trial, as your honors know And a jury may very well come back and say That that's not a sufficient manifestation of consent But for summary judgment we would submit that That determination could not have been made Because there are disputed issues of material fact So, let me just ask you So who are the third parties who Just give me a name One third party who Received a license from the Players Association To use one of the class members' images The largest license by far is Electronic Arts For use in the Madden franchise Okay, that's what you're referring to as EA? Yes Electronic Arts, okay So, suppose this was sort of a slightly different lawsuit That your clients were suing Electronic Arts Because they have some evidence That their images were used by Electronic Arts And Electronic Arts' defense is No, we obtained a license from the Players Association Would the Players Association at that point Be stopped from asserting an agency relationship? I'm sorry, your honor I just want to make sure that I understand your hypothetical So if EA was sued by the players Your clients sued the players And they allege that they were watching a video game And they saw their image, their number or whatever In the video game So they sued because they want They sued them because they want to be compensated For the use of their image Wouldn't Electronic Arts come back and say No, we're not liable to you Because we received a license from the Players Association To use your image? They almost certainly would say that And I think it's telling that In that Electronic Arts agreement And in the other licensing agreements With these third parties such as Top Sports Cards It states that Electronic Arts acknowledges That Players Inc. sometimes receives licenses From non-GLA signing players And so by signing that Electronic Arts acknowledged that not every NFLPA Every player that was in those video games Might have signed a group licensing authorization Is that in the record? Yes, your honor It's not exactly on page 259 But it's probably a few pages before that It's right around the 250s So when Electronic Arts includes that provision in its contract Is it acknowledging that it could be liable To some other player individually? I think it's for the protection of For exactly what your honor suggested before If Electronic Arts got sued The NFLPA may not have wanted them to come back and say Oh, we didn't know that you weren't getting group licensing Authorization forms for every retired player I would like to reserve the remainder of my time Unless your honors have any further questions  I'll forgo the appearance this time, your honor We think Judge Klausner got it right in this case as well You have five individual plaintiffs Proceeding on individual claims Again, diversity case Common law, fiduciary duty Agency allegations And they forewent any arguments of agency by estoppel Implied agency It was only an agency, expressed agency Created from facts and circumstances And so we all struggle, the district court struggles And this court will struggle To try to define the agency And you can already see that in the briefing We can see it in the argument So we look at these facts and circumstances And ultimately what the plaintiffs had to come forward Under Rule 56 was come forward with evidence To suggest that they could raise a tribal issue On one of these factors of agency Which was what was before the court of law Well, let me ask a question The bylaws of the NFLPA state Its objectives are to engage in group licensing activities And to create opportunities for players To enhance off-the-field income After the retirement from football Given that these are the stated objectives Why doesn't membership of the organization Provide evidence of the plaintiff's consent? Judge Nelson, a few reasons why it doesn't Number one, it is far too generalized It doesn't say we will undertake A fiduciary duty to you to go and find licensing It is a generalized statement of intent On the first half of the statement It's not specific to active versus retired players Number two, what the law requires Is that the principal Clearly evidence is sent to the agent To act in a particular area There's no definition, there's no bounds Upon this relationship Well, why isn't the fact that At least Cobham-Jones during the actionable period Paid dues to the Players Association Combined with the statement of the Players Association And also the statement of the Players Association Executive Directors Create a genuine dispute of material fact As to whether or not there was assent? Your Honor, because nowhere in any of those statements Is anything linked to the issue of licensing We have generalized statements And the plaintiffs, none of them Well, how else do you reap off the field profits Other than by licensing third parties? There's a number of different ways And there was record evidence I don't think it's before this Court Of a number of different ways That the Players Association works with retired players To help them financially And proceed financially Licensing is a very specific issue And, for example, if we take the counterfactual Take Joe Montana Is the NFL Players Association The exclusive licensing representative for Joe Montana? Do we think that Joe Montana Believes that he has vested the Players Association With the right to license him Because at one time he paid dues? Well, that's interesting Because probably Joe Montana Doesn't need the Players Association To get him licensing contracts Whereas the players who weren't superstars Probably do And that's why they would join the Players Association Because combined they have more selling power Than individually And the one problem with the plaintiff's argument In that regard Is that the Players Association Established a program With a written contract That laid out this group licensing activities These licensing activities that would take place And this is a case of people who weren't part of that Chose not to be part of that So we struggle And the court struggled, I think Included, we say properly That you can't have an agency Where, among other things The alleged principles Forewent the opportunity To enter into the express written agency Counsel, correct me if I'm wrong But as I read the record From 2007 to 2011 There were no GLAs, is that correct? That's for the most part correct, Your Honor But you're saying In response to Judge Wardlow's question There would have to be Something akin to a GLA Well, no It's a bit different, Your Honor What I'm saying is that Again, we're in this fact and circumstance environment Where we have to pull from A constitution that's broadly written Disseminated in some way That, by the way There's no testimony in the record I believe, from any of the two plaintiffs Who actually paid dues That they paid their dues Based upon the representation In the constitution Again, that's this assent problem But the point that we're trying to make With the group licensing agreements The GLAs Is that when this organization Wanted to undertake to license And have a duty to license players It did it in a formal, written contract manner And that's what negates This creation, we say, whole cloth Of an agency Why isn't that just an argument? Well, it is an argument, Your Honor But again, we are I mean, that's certainly one point of view And say, well, you know You need a GLA What about GLA states? Group licensing agreement I was going to ask you Along with Not using Don't mention football players' names I have no idea who they are I think he thought it was Myself and Judge Nelson You have no idea I think Joe Montana is a big guy in football He's a famous player Who went to Notre Dame? The Leewald syndrome of football Well, Judge Orlott Picked up on the point Which is that A famous player Doesn't typically But let's get back to Why isn't that It's fine, that's your position You need a GLA To To show assent But they say, no We Reduce pay members And we expect fully The Benefits of membership Which includes having the Association do the things it said Which is to promote our Off the field income And what's lacking in the record, your honor Is any testimony from the five Individual plaintiffs that They joined for the purpose of that benefit In fact, them three didn't Join in the relevant period I thought I thought Mr. Lubick Quoted to a deposition by Grant Who said he wanted all the benefits of Ownership, of membership And again, vaguely And never able to actually identify Communication by him Indicating that licensing Was one of the benefits What's so difficult about that? Say, look, I want it all This is supposed to provide us benefits They talk about maximizing our income I don't know how they do it I'm a football player, I'm not a lawyer I'm not an accountant, I'm not a licensing agent I count on them To do this for me And they said that's what they're going to do And I said, well, I'm going to pay my money So I can get these benefits, whatever they are And I consent I'm sure willing to take more money We think that strains The law of agency Because When you hire a lawyer You don't say, well, you know I hire you to make objections And I hire you to You know, file pleadings Does your client Authorize you Everything you're saying here today? I bet you they didn't They sort of trusted you They hired you and they trusted you to do your job Right? But there's compensation Agreed upon between lawyer and client? Well, they paid dues And does the player's association commission? Is the player's association exclusive? Does the famous player Is he bound to use These are good questions For the jury Tell the ladies and gentlemen over there Let's see what you would say To the jury Why aren't these all Questions you can thrash out Because under rule 56 There has to be some showing And what is lacking in the record The showing is We paid dues and they said They would maximize our income Our retirement income Right, but three did not pay dues So we're going to put those three aside I understand You have a more difficult You know, we Pressed opposing counsel on his weak Part of the case And this is your weak Part of the case So telling us you also have a stronger case Doesn't help you Just sort of burns time That doesn't advance I'm going to focus on Mr. Cobb and Mr. Jones There we go I knew I could get you So we deposed these gentlemen And the record is the deposition That's really the record evidence here Because there's no agreements There's no e-mails There's no communications So it's down to that And the record evidence And this is in the excerpts of record For Mr. Cobb 105 And the supplemental record 403 for Mr. Jones And Mr. Cobb said he believed the NFLPA Players Association Stopped acting as his agent five to six years ago So you have a testimony From the plaintiff Who is purporting to have vested The Players Association to act As his agent And doesn't believe they represent him Also We were focused on the assent issue But then you have this whole question of control And agency Requires control And under the plaintiff's theory Which is once you pay dues There is an agency created That doesn't comport With common law rules of agency In this case we focus on California law Because the bulk of the plaintiffs Reside in California Mr. Grant during the case moved to Ohio I believe But we're going to stick with California law This is very different than the other case Because we know who the plaintiffs are California law Common law of agency Doesn't allow for the creation of an agency That says I paid some dues And now broadly You do whatever you want There is control You're saying that control has to be By the Principal having day to day Communications But doesn't the Players Association Have to abide by its bylaws And isn't that A form of control That it has It has rules that it has to play by And that's the control It can't do something in contravention Of that This is the problem we think of Relying on the Constitution It's a very vague and generalized statement And it doesn't talk about For what purposes A player can be licensed Take the example of a player who's Religiously devout Doesn't believe in drinking alcohol That player presumably Wouldn't want to be licensed to a beer commercial Which is a very common way That football players And it's very common in advertising Associated with football So that's the kind of control that you see In licensing activities  And that's the problem with this theory of agency And let's just step back for a moment And be practical As Judge Kaczynski indicated earlier What's happened here is Class action was brought In the Northern District in the Adderley case Based on the written agreements So now we have this follow on class action And we have enterprising and creative lawyers Who are trying to find a way Around that prior action But the problem is Is that we can't create these duties And obligations full clock It's not consistent with the law And it's also not consistent with What every person who has ever Paid dues to the NFL Players Association As a retired player An active player Of what they would want And the record evidence Even if we go back to this Clay Walker email Which counsel referred to Which I must point out It was a 2004 email So I'm going to talk about the statute of limitations issue In a moment But that's an email that is sent Seven years before this action was filed There's no indication That that is the continuing course of conduct And what that email says When we read it Is we represent a lot of players In this group licensing program And we can get access to other players And nowhere in this record Is there communication from the Players Association To the player, the five plaintiffs The five plaintiffs to the Players Association Saying I want you to be my licensing agent We undertake to be your licensing agent And here are even the most basic parameters Of the relationship Not day-to-day control Not managing, micromanaging But just the most basic elements Those are all lacking Are you saying basically If the NFLPA just simply said We're going to help retired players Obtain licensing agreements The offer just to help them out is not enough There has to be more Exactly To create an agency To create agency We're not talking about the expanded Fiduciary duty Or to give rise to fiduciary duty What I was distinguishing it from Which was what the Players Association Did and I don't know If this is in the record It was part of discovery Is calls come in We need two players to attend this golf tournament They reach out to somebody That they know Is interested and can use the money Now that's very different from undertaking a fiduciary duty To go out and maximize Your revenue That's just a very different concept Fiduciary duty is an extremely high duty And it's not a duty that At common law is lightly Found I'd like to turn to the statute of limitations Issue but I just want to note One point which Judge Kaczynski picked up on I was looking at the record Before the statement The statement was made that The plaintiffs did not have the benefit Of some of this discovery from electronic arts Which is loosely commonly referred to as EA And they're the producer of the John Madden video game It's a very popular video game There are certainly a number of active players That are in there Now a few points Number one, there was no 56F request That I can recall and I can find When I got ready to come up here Plaintiffs never said We need more time It is certainly my belief And if it's an issue the court is interested in We can just verify it I don't believe that that discovery postdated Summary judgment I think it predated summary judgment And I don't believe, to Judge Kaczynski's point That the plaintiffs ever took the position That they were lacking evidence And the third point There's no record evidence Despite subpoenaing electronic arts I was there for the deposition of the electronic arts producer There's no record evidence That revenues were being generated That are based upon these five plaintiffs I understand that's different Than the omission argument But on the commission argument That we are wrongfully retaining proceeds That there's no record evidence And they had the chance to take that discovery And we can't prove a negative at some point And we'd say we're not aware of it happening They deposed the major video game producer And found evidence Hypothetically it was happening And the individual sued electronic arts Electronic arts sought indemnification From the Players Association Would the Players Association position be That they did not have the responsibility To indemnify? I certainly think so Because If we look at the Electronic Arts Agreement The Players Association And Players Inc. The other defendant Were not the ones licensing These retired players To electronic arts That's our position in the case That's the position of the NFL Players Association witnesses So I think that the Players Association Would resist the indemnity obligation On that basis I want to turn to the statute of limitations issue I'm a little confused I'm thinking a little bit about This business about the revenues The way the licenses work If electronic arts Had players That were participating In the game Or one of these other companies They would pay over the revenues To the association? I'm not sure I remember how it works Your honor is the short answer I mean why would they pay To the association Let's say they have a particular player I don't quite remember how the game works I guess there's a list of players And the players on the field With numbers on their jerseys And you can maybe identify them As being particular individuals Related to a real life person Yes Why would they send the revenue The royalties for that Why would they send that to the association Rather than to an individual player The short answer again I don't believe this is all on the record But it goes to the question That you're asking As a matter of fact Active players Sign licensing agreements With the players association A form of group licensing Even for an active player For those who follow football Drew Brees, Tom Brady Pick a player The players association Doesn't rely upon mere membership To be the licensing agent For the active players So what happens is They collect a license from all the players And en masse They license that to licensees The predominant one in this case Being Electronic Arts for the Madden franchise So as part of that relationship The licensing revenues flow en masse To the association For the list of players That are in the licensing agreement But what about the players Who are not in the group licensing agreement Well that money does not flow To the players association And the players association position By declaration and by testimony Was that it's not getting money For any of the players who aren't subject to Well what I'm trying to understand Is the negative parent of what you were saying You were saying they didn't say They were sending us any money But they wouldn't be sending you any money Electronic Arts Unless somebody Was in a group licensing agreement The video company Would have no reason to send the association Money unless there was content That listed those players Or under the plaintiff's theory If the players association Was wrongfully licensing Was licensing the five retired players And got money For the five plaintiffs in the case But that would be reflected In some group licensing agreement The only way they could do it Is by having Well it could be unilateral I mean it wouldn't have to be group licensing But there would have to be some What the testimony from the players association is And the record evidence is that there would have to be some agreement That we license And I take it that was discovered Whatever agreements there were And yeah they subpoenaed Electronic Arts They deposed the Electronic Arts producer And there is no evidence of that Because the testimony is that it doesn't happen Well what about the association? Yeah the testimony was Yeah I don't know how much of this is in the record I was there I mean the CFO was deposed All kinds of financial documents were produced And there was nothing that we saw And nothing the plaintiffs identified Indicating revenues had come to the players association Or players inc Attributable to the five plaintiffs And again beyond that We can't prove it didn't happen We can just say we have no record of it And we produced the documents to the plaintiff And they did not identify that ever To the court below Or to this court Okay thank you Can I just turn briefly to the statute of limitations issue We raise this in a motion to dismiss We cross the field on this basis This is a case where there is no dispute about accrual Plaintiffs concede that the claims accrued Outside of four years Which is the California statute of limitations Which we do show you They claim continued violation And there is absolutely no authority For the application of that doctrine Under California law In a fiduciary duty context The only cases where we see that apply Are where there are several individual transactions The Aria case That's referenced by the plaintiff In the California Supreme Court Overbilling by Canon In connection with photocopier services or products Each overbilling is an instance Where you can have a claim By the way Not a fiduciary duty claim A 17200 unfair competition law claim Intermedics case The Noggle case The closest cases that can be found Dealing with fiduciary duty type scenarios And the courts rejected that And what they found is that Sorry I see I'm out of time Thank you Are we clear from the closing counsel I think you're Thank you I'm going to take a minute of your time Do you agree That there is no evidence That shows the NFL Players Association derived any revenue From licensing The plaintiff's names Or likenesses I could find nothing in the record Nor could my law clerks I think our best evidence is that Is what I cited earlier Is the electronic arts agreement Which is tiered Going towards 2012 But beyond that I believe that that's our best evidence But again that's only half of our claim The other half which we think is the larger half Is that they did not Pursue these licensing agreements The larger half Redundant I'm sorry My first point is Something counsel said in his opening remarks Which is that There's a struggle to define agency here And we think that really underscores Why this case should have gone to a jury Because there are so many disputed facts And there are so many inferences that can be drawn The second point is to address Something that Judge Wardlaw raised About popular players Somebody such as Joe Montana These players don't join group licensing And if they do they negotiate their own Separate ad hoc Licensing agreements And that distinguishes them That enables them to go out And make more money if they believe that they were worth more The third point Is that counsel argued That day-to-day control Is an essential element of an agency relationship And that's just not true At all There's no cases The one case that says that is an outlier case From the Northern District of California Called InBank But if you go to the California authority underlying that It states It's a completely separate test It's an employer-employee relationship Rather than determining an agency factor There's seven or eight factors Rather than the three that are contained In California's agency test And also, counsel argued that For instance, he said in the Clay Walker email We can call players And get their licensing That would seem to be almost an admission Of a right to control If there was no right to control Why would they be calling the players And asking to license their name and likeness And that's our argument On appeal And in the district court Was that individuals control their names and likenesses And our laws protect that Our laws enable individuals To control their names and likenesses And the final point is to respond To the statute of limitations argument We would submit that There shouldn't really be a statute of limitations problem Because all of the claims arise From things in the past four years But if the continuing accrual rule did apply There are new things For example, each year the NFLPA Published new bylaws and regulations Or maybe chapter regulations And in October 2007 It states that one of the purposes of the NFLPA Is to license In group licensing For retired players And that is On page 43 of our excerpts of record Unless your honors have any other questions I'll submit Thank you. We'll stand to submit.
judges: Kozinski, Nelson, Wardlaw